IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARSHAL LEE McCURLEY, | ) | |
| Individually, and on behalf of the Estate | ) | |
| of Georgina (Jeannie) Ann McCurley, | ) | |
| deceased, and All Beneficiaries Thereof, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-12-1135-C |
| | ) | |
| SHAPKOFF MOVING SERVICES, | ) | |
| INC.; | ) | |
| GRANITE STATE INSURANCE | ) | |
| COMPANY; | ) | |
| MAYFLOWER TRANSIT, L.L.C.; | ) | |
| UNIGROUP, INC.; | ) | |
| VANLINER INSURANCE | ) | |
| COMPANY; | ) | |
| and SHAUN DEWAYNE ADAMS, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

This case arises out of a fatal traffic collision in Garvin County, Oklahoma, on August 15, 2012, between Georgina Ann McCurley and Shaun Dewayne Adams ("Adams"). At the time of the accident, Adams was operating a commercial carrier tractor-trailer displaying the names Shapkoff Moving Services, Inc. ("Shapkoff"), and Mayflower Transit, L.L.C. ("Mayflower"). Defendants Mayflower and Unigroup, Inc. ("Unigroup"), Mayflower's parent company, now move for summary judgment, claiming that they are improper parties to this lawsuit. For reasons more fully set forth herein, the Court now GRANTS Defendants' motion (Dkt. No. 27).

## I.  LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted).  If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.  A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

## II. DISCUSSION

### A.  Vicarious Liability

The gravamen of Plaintiffs' first claim against Defendants Mayflower and UniGroup is that Mayflower was in an agency relationship with Defendant Shapkoff, Adams's

employer, and thus Mayflower and UniGroup are vicariously liable for Adam's negligence. Both Plaintiffs and Defendants Mayflower and UniGroup agree that Mayflower had an Agency Agreement with Shapkoff.  However, in moving for summary judgment, Mayflower and UniGroup argue that the Agency Agreement was not in effect at the time of the accident and thus they cannot be held liable under either federal or Oklahoma state law.

1.  Federal Regulations

Because the tractor-trailer involved in the crash prominently displayed Mayflower's logo, Plaintiffs argue that the "logo liability" rule controls and that Mayflower is thus liable. The Tenth Circuit adopted the "logo liability" rule in Rodriguez v. Ager, 705 F.2d 1229, 1231-36 (10th Cir. 1983), and imposed liability on a defendant because that defendant had not removed its placards from a truck before an accident, notwithstanding the fact that the driver was not acting as an agent of the defendant at that time.  The Court held that the then-in-effect ICC regulations demanded this result.  However, as more recent opinions have acknowledged, "amendments made to the leasing regulations relied upon by the court in Rodriguez call into question the continued viability of the logo liability rule."  Mercer Transp. Co. v. Greentree Transp. Co., 341 F.3d 1192, 1196 n.4 (10th Cir. 2003).[1]  The Court concludes that the ICC's post-Rodriguez clarifications demonstrate "that the control

---

[1] See also Ross v. Wall Street Sys., 400 F.3d 478, 479-80 (6th Cir. 2005) ("In the past, some courts followed a doctrine of 'logo liability,' under which the presence of a carrier's government-issued placard created an irrebuttable presumption that the lease continued in effect. . . .  However, the underlying ICC regulations have changed, and this rule is no longer in effect."); Jett v. Van Eerden Trucking Co., Case No. CIV-10-1073-HE, 2012 WL 37504, *3 (W.D. Okla. Jan. 9, 2012) ("The [1992] amendment undercuts cases such as Rodriguez relying on earlier versions of the regulation.").

regulations were not intended to create a federal theory of liability supplanting otherwise applicable state law concepts of agency, independent contractor, and the like," Jett, 2012 WL 37504 at *4, and thus Mayflower and UniGroup cannot be held liable under federal law.

## 2. Oklahoma Agency Law

In order for Mayflower and UniGroup to be vicariously liable for Adams's negligence, Plaintiffs must provide "competent evidence not only that the relation of principal and agent existed but that the tortious act was committed in the course of the employment." Hill v. McQueen, 1951 OK 47, ¶ 3, 230 P.2d 483, 484. Defendants concede that an agency relationship existed between Mayflower and Shapkoff, but dispute that the agreement was in effect at the time of the accident. Although the question of whether an agent acted within the scope of the agency agreement is usually a question of fact for the jury, the Court may "rule on a *respondeat superior* issue as a matter of law" "when [only] one reasonable conclusion can be drawn from the facts." Baker v. Saint Francis Hosp., 2005 OK 36, ¶ 16, 126 P.3d 602, 606-07. Plaintiffs have the burden of demonstrating that the agent acted within the scope of the agency. Id.

In their motion, Defendants Mayflower and UniGroup contend that "at the time of the accident, Shapkoff was not acting under its contractual agreement with Mayflower. Rather, Shapkoff had been contracted by Delaney [Moving & Storage, Inc. ("Delaney")], a non-party, who was performing hauling services directly for the DOD." (Defs.' Br., Dkt. No. 27, at 14.) As evidence that Shapkoff was hauling goods for Delaney at the time of the accident, Defendants point to the trip's Bill of Lading, which clearly designates Delaney as the

transportation agent.  (Defs.' Reply, Dkt. No. 39, Ex. 7.)  Defendants also offer the affidavits of Dave Bengston, the Director of Safety for Transportation Services Group, Inc. ("TSG"),[2] Sonja Pullaro, the Director of Government Transportation for TSG, and Joe Baldwin, Executive Vice President of Shapkoff, all of whom disclaim, under penalty of perjury, Mayflower and UniGroup's involvement in the shipping transaction giving rise to this case. (Defs.' Br., Exs. 1, 2, 3.)  For example, Joe Baldwin affirmatively states that in the present matter Shapkoff was operating outside its Agency Agreement with Mayflower, Shapkoff was transporting the shipment pursuant to a contract with Delaney, and that Mayflower and UniGroup did not exercise any direction or control over the shipment or driver or receive any revenue from the shipment.  (Id., Ex. 3 at 1-2.)

In response, Plaintiffs contend that several pieces of evidence contradict Defendants' evidence and create a genuine issue with respect to whether Shapkoff was acting as Mayflower's agent at the time of the collision.  First, Plaintiffs argue that because Shapkoff lacked the authority to operate in Oklahoma, it must have been acting on Mayflower's behalf. However, whether or not Shapkoff was operating illegally at the time of the accident is irrelevant to whether it was acting within the scope of its Agency Agreement with Mayflower.  Next, Plaintiffs accuse Mayflower's counsel of bailing Adams out of jail, seemingly arguing that this is evidence of the relationship between Mayflower and Adams.

---

[2] Transportation Services Group, Inc., is the sole member of Defendant Mayflower Transit, L.L.C.  UniGroup wholly owns Transportation Services Group.  (Defs.' Reply, Ex. 1 at 1.)

But, at that time, the attorney effectuating Adams's release represented only Adams and had not yet been retained to represent Mayflower or UniGroup. Plaintiffs also seek to establish a connection between Mayflower and Adams by attaching financial records showing Shapkoff paid "Mayflower drivers." As Adams is not listed as one of Shapkoff's contract employees paid by Mayflower, however, this information is irrelevant. Similarly, Plaintiffs attempt to argue that Mayflower authorized Adams as a driver in its system by putting forward a card showing that Adams passed a Lexis Nexis criminal background check, as required by Mayflower. In response, Mayflower produced its system records which clearly demonstrate that Shaun Dewayne Adams has never appeared in its system as an authorized driver. Additionally, the fact that a non-party, TAI Title, held a lien on the tractor at issue is irrelevant. Finally, Plaintiffs submit that Shapkoff's answer to Interrogatory Number 22 creates an issue of fact because it contradicts the testimony of Shapkoff's Executive Vice President, Joe Baldwin. In responding to the Interrogatory, Shapkoff stated that Delaney originally offered the contract to Mayflower, but Mayflower declined to service the shipment because of a lack of drivers. Thus, Shapkoff received the contract instead, although neither Delaney nor Mayflower were aware of Shapkoff's involvement. Given that Shapkoff contracted to service the shipment through Delaney's broker, Mesa, it is not contradictory to say that Delaney did not know who ultimately serviced the shipment. Moreover, in both the Interrogatory response and Baldwin's affidavit, Shapkoff clearly made its position known: its contract was with Delaney, not Mayflower, and Shapkoff acted outside the scope of its Agency Agreement with Mayflower in servicing the shipment. Thus, notwithstanding

Plaintiffs' protestations of "self-serving affidavits," the Court concludes that at the time of the accident, Shapkoff was acting independently of its agreement with Mayflower, meaning Mayflower and UniGroup cannot be held vicariously liable for Adams's negligence.

As an alternative theory of respondeat superior liability, Plaintiffs allege that even if Shapkoff was acting outside of its agency agreement with Mayflower, the presence of Mayflower's logo on the tractor-trailer supports a finding of apparent agency.  Oklahoma recognizes that apparent authority can create an agency relationship under the following three conditions:  (1) conduct of the principal demonstrates the existence of an agency relationship; (2) a third person relies on that conduct; and (3) that third party changes its position due to that reliance.  Diamond Sevens, L.L.C. v. Intelligent Home Automation, Inc., 2010 OK CIV APP 131, ¶ 12, 245 P.3d 1260, 1264.  In this case, Plaintiffs cannot demonstrate any reliance. It would be illogical to conclude that the decedent chose to get into an accident with the tractor-trailer at issue because it displayed Mayflower's logo.  Thus, apparent authority will not support Plaintiffs' claims of vicarious liability against Defendants Mayflower or Unigroup.

B.  Negligent Training & Supervision

Oklahoma law recognizes that "[e]mployers may be held liable for negligence in hiring, supervising or retaining an employee."  N.H. v. Presbyterian Church (U.S.A.), 1999 OK 88, ¶ 20, 998 P.2d 592, 600 (emphasis added).  However, because Shapkoff was Adams's employer, this tort does not lie against Mayflower or UniGroup.  Not only do system search results prove that Mayflower does not have an authorized driver by the name

of Shaun Dewayne Adams (Defs.' Reply, Ex. 8), Adams's termination notice came from Shapkoff, not Mayflower.  The termination notice states:  "This is to inform you (Shaun Adams) that effective 18 Sept 2012 you are terminated from employment with <u>Shapkoff Moving Services Inc.</u>" (Pls.' Resp., Dkt. No. 33, Ex. I (emphasis added).)  Moreover, three individuals have sworn under penalty of perjury that Mayflower did not supervise Shapkoff's employees or control their hiring or training.  (Defs.' Br., Ex. 1 at 4, Ex. 2 at 5, Ex. 3 at 3.)

## III.  CONCLUSION

Because the Agency Agreement between Mayflower and Shapkoff was not in effect at the time of the accident and Mayflower did not employ Adams, Mayflower and UniGroup are improper parties to Plaintiffs' suit.  Accordingly, Defendants' Motion for Summary Judgment (Dkt. No. 27) is hereby GRANTED.  Plaintiffs' Motion to Compel Discovery Responses of Defendant Mayflower Transit, L.L.C. (Dkt. No. 23), is thus MOOT.

IT IS SO ORDERED this 17th day of April, 2013.


ROBIN J. CAUTHRON
United States District Judge